### JOHN LEA *vs.* HELEN A. LEA.

If a married woman leaves her husband with his consent, and remains absent five years, this is not such a desertion as will entitle him to a divorce.

LIBEL for divorce for the cause of desertion for five years. At the trial in this court, before *Metcalf*, J., the jury were instructed that if they should find that the respondent left her husband with his approbation, wishes or consent, it did not constitute a desertion in law. The jury returned a verdict for the respondent, and the libellant alleged exceptions.

*J. D. Colt*, for the libellant. A consideration of all the provisions of Gen. Sts. *c.* 107, § 7, shows that the word " desertion," as there used, has a peculiar meaning, different from its common acceptation and the meaning attached to it by legal writers. In this statute, it means the act of purposely abandoning the society and dwelling of the other party, whatever the disposition of the party abandoned may be. Desertion is spoken of as possible, though the party deserting may be driven away by extreme cruelty and neglect; and, if so, the desertion intended by the statute may also take place, although it is by the consent of the one who is deserted. It is an offence against society, for which the legislature intended to enact that a divorce may be granted. The provision in *St.* 1838, *c.* 126, § 1, requiring that desertion should be without the consent of the party deserted, was left out of the later statute with a view to change the law. Besides; the instructions in this case limited the consent to the time when the respondent left her husband. They should at least have required the jury to find that his consent to her absence extended over the whole period.

*I. Sumner & M. Wilcox*, for the respondent, were stopped by the court.

BIGELOW, C. J.   The learned counsel for the libellant does not contend that the word desertion, either in its ordinary or technical sense, is properly applicable to a case of departure from the society or service of a person with his knowledge and assent.   Certainly in legal phraseology the word is uniformly used to denote a wilful abandonment of an employment or duty, in violation of a legal or moral obligation.   A soldier is said to desert his post, a sailor his ship, an apprentice his master, when they depart from the service to which they are bound, without permission or contrary to orders.   Admitting such to be the proper and ordinary signification of the word, the counsel contends that it is used in a different sense and is to receive a different interpretation in that provision of the statutes which authorizes this court to grant a divorce " when one party has deserted another for five years consecutively."   Gen. Sts. *c*. 107, § 7.   But we are unable to see any plausible ground on which the construction of the language of the legislature which the counsel urges on our attention can be supported.   Certainly there is nothing in the previous history of the legislation on this subject which gives any countenance to the suggestion that the legislature intended to give authority to dissolve the bond of matrimony in all cases where a husband or wife had departed from the other with his or her voluntary assent.   In *St*. 1838, *c*. 126, § 1, it was expressly provided that the desertion should be " without the consent of the party deserted."   This clause was omitted in *St*. 1857, *c*. 228, § 2, for two very obvious reasons. In the first place, it was superfluous; the word " desertion," as has been already stated, of itself implying that the separation was not with the assent or permission of the party deserted, but the contrary.   In the next place, by *St*. 1857, *c*. 228, § 2, the legislature intended to provide that in two special cases the party deserting might maintain a libel for divorce from the bond of matrimony ; that is, where a party had left the abode of the other on account of his or her extreme cruelty, or the desertion of the wife was caused by the gross or wanton and cruel neglect

of the husband to provide suitable maintenance for her, it was enacted that the bond of matrimony might be dissolved on the libel of the party deserting, after the separation had continued for five consecutive years. In embodying into one section a provision embracing these two cases, as well as the common one of a desertion for five consecutive years, as valid grounds of divorce, it was of course necessary to omit the words of *St.* 1838, *c.* 126, requiring the desertion in all cases to be without the consent of the party deserted. This is the explanation of the phraseology of the provision, as it appears in *St.* 1857, *c.* 228, § 2, and as it was reported by the commissioners and enacted in the General Statutes. No further alteration in the law was thereby contemplated. The purpose was simply to embody in a single clause the enactments in relation to a divorce from the bond of matrimony on the ground of desertion. Looking at it in that light, it is clear that every word of the section has full effect and operation, without resorting to any strained construction of any part of it, or giving to the word " desertion," as there used, any new or forced signification. The first clause enacts in substance that desertion for five consecutive years shall be a valid ground for divorce ; the second clause or proviso applies to and includes only the two cases before referred to, and is intended to give to the party deserting in those cases the right to file a libel for divorce ; or, to put it in another form, the statute is in substance this : desertion shall constitute a valid ground for divorce, provided that where the libel is filed by the party deserting it must be made to appear that the desertion was caused by the extreme cruelty of the party deserted, or by the neglect of a husband to furnish suitable maintenance for the wife. This interpretation of the statute not only gives full force and effect to each and every part of the enactment, but it is consistent with the policy of the law, as it has always been understood and administered in this commonwealth, by which the marriage tie is held to be indissoluble, unless it can be shown that there has been a breach of duty and violation of the contract by the party against whom a divorce is sought to be obtained. There is no such breach or wrongful act where a

husband or wife leaves the other with his or her full and volun-tary assent. It would require very explicit language to convince us that the legislature intended to reverse this well settled and salutary policy. Certainly we should be slow to arrive at a conclusion by implication from doubtful or equivocal language, that a separation by consent of both parties, however long con-tinued, would of itself furnish sufficient ground for a dissolution of the bond of matrimony. Such a provision of law would fall but little short of giving a direct sanction to a mode of obtain-ing a divorce by collusion between the parties.

For these reasons, we are of opinion that no desertion by the wife was proved at the trial, according to the allegation in the libel. She left her husband with his assent, and, in the absence of evidence to the contrary, the presumption is that her absence was continued under that assent up to the time of filing the libel. The ruling of the court was entirely right, and the order must be, *Libel dismissed.*