JAMES J. BRINKERHOFF AND ANN ELIZA, HIS WIFE, v.
GARRET MERSELIS' EXECUTORS.

1. A legacy payable at a future day, with no directions as to interest,
bears interest only from the day of payment. But a legacy to a minor
child of testator or to one unto whom the testator stands *in loco parentis*,
if. no provision be made for the support of such minor in the will, bears
interest from the death of the testator.

2. Where a testator bequeaths an annuity of four hundred and twenty
·dollars to his widow for her life and. at her death distributes the exact
principal—seven thousand dollars—among certain legatees, to be paid
immediately after her decease, two thousand five hundred dollars of which
is to be paid to the infant grand-daughters, with directions that if his
wife should die before they should be of age, it should *not be paid over* to
them until of age, such legacies will carry interest from the death of the
widow—that being the evident intention of the testator.

This was a suit brought in Hudson circuit court, by James
J. Brinkerhoff and Ann Eliza, his wife, (late Ann Eliza
Merselis,) for the benefit of said Ann Eliza, against the
executors of Garret Merselis, deceased, to recover a legacy
bequeathed to her by the will of the testator. Upon the
trial, the only question between the parties was, whether
the legacy to the plaintiff bore interest from the death
of the widow of the testator, at which time it was given, or
from the time when the plaintiff became of age, at which
time it was to be paid to her. It appeared in evidence that
the plaintiff's father and mother died when she was at an
early age; that she was, at their death, taken into the fami-
ly of the testator, her grandfather, and supported and
brought up by him, having no estate from her mother, who
was testator's daughter, and a very small estate from her
father. The part of the will giving the legacy to the plain-
tiff is set forth in the opinion of the court; no provision
was made in the will for the support of the plaintiff, except
as a member of the family of testator's widow, to whom the
will directed to be furnished by testator's sons during
her life, with sufficient of the produce of the farm for the
support of herself and family. The plaintiff remained
with and was supported by testator's widow until her death,

at which time the plaintiff was about sixteen years of age.

A verdict was taken for the amount of the legacy and interest from the widow's death with leave to move the court to set it aside and order the payment for the legacy only, without interest.

The question was argued before the CHIEF JUSTICE, as judge of Bergen circuit, by Mr. *Zabriskie*, for plaintiff, and Mr. *Bradley* and Mr. *Hopper*, for defendants.

GREEN, J. This action is brought to recover a legacy bequeathed to the plaintiff's wife by the will of Garret Merselis, deceased. A verdict has been taken for the plaintiff, subject to the opinion of the court, upon the question of interest. The bequest is as follows: "I give and bequeath to my two grand-daughters, Ellen Maria Benson, (daughter of John Benson, deceased,) and Ann Eliza Merselis, (daughter of Cornelius E. Merselis, deceased, the children of my daughter Jane, deceased,) and to their heirs and assigns forever, each the sum of one thousand two hundred and fifty dollars, to be paid immediately after the decease of my wife, Ellen; but it is my will, that if my wife, Ellen, shall die before they arrive at the age of maturity, that it shall not be paid over to them until they arrive to twenty-one years of age. And further, I will that if either of my aforesaid grand-daughters * * * * * shall die without lawful issue, that then such share or shares shall be divided among my surviving children, share and share alike."

It appears in evidence, that the legatee, the wife of the plaintiff, had always from her infancy lived with the testator, and was brought up and supported by him; that her mother died when she was an infant. Her father also died some years before the testator, leaving some property, but not sufficient to support the child.

The testator died in April, 1843. The legatee continued to reside with her grandmother, the widow of the testator, until the death of the widow, which occurred on the 20th of

April, 1848.   The legatee came of age on the 6th of July, 1853.

The question is, from what time does the legacy bear interest—from the death of the testator, from the death of the grandmother, or from the time that the legatee attained the age of twenty-one years?

The wife of the testator having died before the legatee arrived at maturity, by the terms of the will the legacy became payable when the legatee arrived at the age of twenty-one years.   The *general rule* is that legacies bear interest from the time they are payable.   Interest in this case must therefore be calculated from the time the legatee came of age, unless it be shown that the case falls within some *exception* to the general rule.

Where the legatee is a minor child of the testator, and no provision is made for its support, interest on the legacy will be allowed from the testator's death, by way of maintenance.   The parent is under obligation to provide a present maintenance for his infant children, and the law will not presume him so unnatural as to leave the child destitute. In such cases it has been adopted as a settled rule of construction, from regard to the presumed intention of the testator, that the legacy draws interest from the death of the testator.   *Beckford* v. *Tobin*, 1 *Vesey*, sen., 310; *Haughton* v. *Harrison*, 2 *Atk.* 329; *Heath* v. *Perry*, 3 *Atk.*, 101; *Ward on Legacies*, 306; *Matthews on Exrs.*, 183; *Raven* v. *Waite*, 1 *Swans.* 553; *Ellis* v. *Ellis*, 3 *Sch. & Lef.*, 1; *Lupton* v. *Lupton*, 3 *J. C. R.* 628.

But the exception does not extend to an *adult* child, nor to the wife of the testator, nor to the niece, nor even to a *grandchild*, unless the testator has placed himself in *loco parentis* to the legatee, or unless there be some circumstance showing that it was the intention of the testator that interest should be allowed.   Same authorities.

There are cases in which a court of equity, for the necessary support of a destitute legatee, will allow interest, or even direct the payment of the principal of the legacy, in a manner clearly inconsistent with the intention of the testa-

tor. But it is not contended that this court has any such power, or that this is a proper case for its exercise if the power existed. Effect must be given to the will according to its legal import, i. e. according to the intention of the testator, gathered from the will according to settled principles of construction.

The claim for interest in the present case rests upon the ground that the plaintiff has placed himself in *loco parentis* to the legatee.

The proper definition of a person in *loco parentis* to a child is, a person who means to put himself in the situation of the lawful father of the child, with reference to the father's office and duty of making provision for the child. 3 *Mylne & Cr.*, 359 ; *Powys* v. *Mansfield, ex parte, Pye,* 19 *Vesey,* 154 ; or as defined by Sir William Grant, master of the rolls, it is "a person assuming the parental character and discharging parental duties." *Wetherby* v. *Dixon,* 19 *Vesey,* 412.

The testator may either have, in point of fact, actually occupied the relation of parent, or where no such relation in point of fact existed, he may, by the terms or the circumstances of the gift itself, have manifested an intention to place himself in that relation. Evidence of such intention *may* be found upon the face of the will itself. As by the appointment of a guardian, directions respecting the education and maintenance of the legatee, or by a request that the father shall not interfere with her bringing up. *Ward on Legacies,* 307.

But from the very nature of the case, evidence of the actual assumption of the parental relation, or of an intention to assume that relation, will often be found in the conduct and declarations of the testator. The principle therefore is clear, and the rule is well settled, that parol evidence of the acts and declarations of the testator are competent to prove that the testator designed to place himself in *loco parentis* toward the legatee. *Rogers* v. *Soutten,* 2 *Keene,* 598 ; *Powys* v. *Mansfield,* 6 *Simons,* 528 ; *S. C.,* 3 *Mylne & C.,* 359 ; *Pym* v. *Lockyer,* 5 *Mylne & Cr.,* 29.

In the case of *Powys* v. *Mansfield*, the Lord Chancellor said, "a rich unmarried uncle taking under his protection the family of a brother who has not the means of adequately providing for them, and furnishing through their father the means of their maintenance and education, may surely be said to intend to put himself, for the purpose in question, in *loco parentis* to the children, although they never leave their father's roof. An uncle so taking such a family under his care will have all the feelings, intentions and objects as to providing for the children which would influence him if they were orphans." And he accordingly decreed that the uncle had assumed that relation, although the child was living with and maintained by its father. The main doubt in the case seems to have been, whether such relation could be assumed while the father was living, and the child actually maintained by him.

In the present case the legatee was an orphan; her parents were both dead; she was destitute of the means of livelihood; she was the grandchild of the testator; she had from the death of her mother, in early infancy, been a member of the testator's family, and had been brought up and supported by him. The will was made and the testator died while the legatee was yet of tender age, totally incapable of maintaining or providing for herself. The circumstances establish the actual assumption of the parental relation, and create a moral obligation upon the part of the grandfather to make provision for the support of the child. Had the grandmother died immediately after the testator, and the child been left at the age of eleven years without a home or a livelihood, there can, I think, be no doubt but that a court of equity would have allowed interest upon the legacy from the death of the testator by way of maintenance, upon the ground that such must be presumed to have been the intention of the testator. He never could have designed to have left a grandchild—for whom he had manifested the regard of a parent in providing for her *infancy*, and making competent provision for her *womanhood*—homeless and destitute during her *youth*.

If the question rested upon these facts alone, interest must be allowed from the testator's death. But there are other circumstances in this case which must be taken into account in ascertaining the testator's real intention.

The testator by his will bequeathed to his wife an annuity of four hundred and twenty dollars, to be paid to her yearly and every year during her natural life, by his executors; also a sufficient of provision for her and her family, to be furnished by his two sons. The annuity to his wife is the interest of seven thousand dollars at six per cent. Upon the death of his wife, he bequeathed the exact sum of seven thousand dollars to different legatees, part of it being the legacy in question. The strong presumption, therefore is, that the testator designed that the sum of seven thousand dollars should be set apart by his executors to secure the annuity to his widow during her life, and that at her death the principal should be specifically apportioned to his legatees.

In addition to the annuity of four hundred and twenty dollars to the widow, the will further provides that she shall have, during her natural life, sufficient of provision for her and *her family*, to be furnished by the testator's sons. It appears in evidence, that the legatee was at the date of the will a member of the testator's family, and that she continued to reside with her grandmother as a member of *her* family till *her* death. The circumstances warrant the inference that the testator designed to secure a maintenance for his granddaughter during the life of his widow, as a member of her family, and upon the death of the widow, that the legatee, if under twenty-one, should receive the interest of her legacy for her support.

Interest will accordingly be allowed on the legacy from the death of the grandmother of the legatee, (the testator's widow,) and the judgment must be entered accordingly.

CITED *in* Jordan v. *Clark,* 1 *C. E. Gr.* 245; Kearney v. *Kearney,* 2 *C. E. Gr.* 63.