HUDSON CO. JUVENILE AND DOMESTIC RELATIONS COURT.

ELLEN ZITO, COMPLAINANT, v. ANTHONY ZITO, DEFENDANT.

Decided September 21, 1934.

For the complainant, *Alexander Simpson*.

For the defendant, *Allan Benny*.

BARISON, J. This action is brought under an act entitled "An act to establish Juvenile and Domestic Relations Courts, defining their jurisdiction, powers and duties and regulating procedure therein" (Revision of 1929; *Pamph. L.* 1929, *ch.* 157, *p.* 274, &c.), and the supplements thereto and amendments thereof.

Ellen Zito, who was married to Anthony Zito on August 23d, 1928, complains that Anthony Zito has failed to provide for her ever since May 1st, 1934. Anthony Zito admits his failure to provide for Ellen Zito since May 1st, 1934, and sets up as a defense a decree of divorce obtained in the Second Judicial District Court of the State of Nevada, in and for the county of Washoe, on May 1st, 1934, which decree was obtained on the ground of extreme cruelty. Ellen Zito attacks the validity of the decree on the ground that it was obtained by fraud.

There is, of course, a great deal of testimony as to their married life and considerable testimony as to the facts surrounding the obtaining of the divorce from which a court of competent jurisdiction may find that the divorce was obtained by fraud. I will not here deal with these questions, but, rather, with the question whether or not the Court of

Domestic Relations is the proper forum to hear and determine any case wherein the validity of a foreign decree of divorce is involved.

Under the Juvenile and Domestic Relations Court act entitled "An act to establish Juvenile and Domestic Relations Courts, defining their jurisdiction, powers and duties and regulating procedure therein" (Revision of 1929; *Pamph. L.* 1929, *ch.* 157, *p.* 274, &c.), the court has jurisdiction to hear and determine disputes involving the domestic relation or the welfare of children, the jurisdiction over which is now or may hereafter be vested by law in any court of this state except the Court of Chancery or Orphans Court. It shall have jurisdiction to hear and determine complaints for violation of the following acts: "An act concerning disorderly persons" (Revision of 1898), "An act for the settlement and relief of the poor" (Revision of 1924), "An act concerning the welfare of children" (approved April 8th, 1915), "An act for the maintenance of bastards" (Revision of 1898), "An act to promote home life for dependent children," and the acts amendatory of and supplemental to the above-entitled acts together with any future acts, revisions, re-enactment or new acts covering similar complaints or offenses, where the gravamen of the complaint under such acts is the failure or neglect of one member of the family to satisfy or discharge his legal obligations to another of a family, and also jurisdiction to hear and determine complaints against any person who shall abuse, neglect, cruelly treat or abandon a child or children or who shall contribute to the delinquency of any child. It shall have jurisdiction to hear and determine in summary manner, disputes involving the domestic relation, where the gravamen of the complaint is the failure to provide support or adequate support.

The Juvenile and Domestic Relations Court was created by the legislature and its power and jurisdiction is limited and confined to such subject-matter as is set forth in the statute.

Nowhere in the statute or in any of the acts therein referred to, can I find any section which confers upon the

Juvenile and Domestic Relations Court the right to hear and determine any issue wherein the legality of a divorce obtained in any foreign state is involved.

The Juvenile and Domestic Relations Court has, by virtue of the statute, the right to hear and determine any issue involving domestic relations where the gravamen of the complaint is the failure to provide support or adequate support for the wife. It is true that as a prerequisite to an award of support, in a case where the marital status is in issue, the court must first determine whether or not the relationship of husband and wife exists. In this case, however, I am called upon to determine the validity or legality of a foreign decree of divorce in deciding whether or not the relationship of husband and wife exists, and I do not believe that the legislature ever intended the Juvenile and Domestic Relations Court to have the right to determine the validity or legality of any foreign decree of divorce.

I will deny the relief sought by the complainant for the reasons herein set forth.