126 N.J. Super. 466 (1974)
315 A.2d 681
IRENE LINDER, PLAINTIFF-RESPONDENT,
v.
RALPH B. LINDER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 3, 1973.
Decided February 6, 1974.
*468 Before Judges HANDLER, MEANOR and KOLE.
Mr. Robert J. Benbrook, attorney for appellant (Mr. J. Douglas Orr on the brief).
Messrs. Pillsbury, Barnacle, Russell and Carton, attorneys for respondent (Mr. Robert E. McLeod, on the brief).
*469 The opinion of the court was delivered by KOLE, J.S.C., Temporarily Assigned.
On January 7, 1964 plaintiff filed with the Monmouth County Juvenile and Domestic Relations Court a complaint seeking support for herself and two minor children, alleging that defendant, her lawful husband, had deserted and failed to support them.
On February 21, 1964, following a hearing, an order was entered requiring defendant to pay $36 a week for the support of his wife and two children. Defendant's application for temporary custody of the children was denied December 8, 1964. On March 19, 1965 an amended order was entered requiring defendant to pay an additional $5 a week until arrearages of $144 were paid in full. On September 30, 1966 defendant filed an application for rehearing and modification of the order of March 19, 1965. On January 17, 1967 a rehearing was held but a modification of the order was denied.
On March 15, 1968, after a hearing on motion of the County Probation Office to recover an arrearage of $587 on the March 19, 1965 order, an amended support order was entered requiring defendant to pay $36, plus an additional $5 a week, until the arrearage was satisfied.
On February 1, 1973 the Probation Office initiated a proceeding to enforce plaintiff's rights against defendant, alleging an arrearage of $8,708. At the subsequent hearing on March 23, 1973 an order was entered fixing $6,000 as accumulated arrearages and directing that defendant be arrested and jailed unless payment of the $6,000 be made by April 23, 1973.[1] The judgment was stayed pending appeal.
At that March 1973 hearing, for the first time defendant's counsel informed the court that in 1963 the parties had been *470 divorced by a Mexican decree. The court refused to admit evidence of that decree, holding that it would not upset the 1967 ruling finding defendant liable for plaintiff's support; that defendant should have appealed the support order, and that it had jurisdiction to hear and determine the matter in aid of litigant's rights. This appeal followed.
The parties were married in 1956 and have two children born prior to the marriage. In July 1963 defendant sued plaintiff for divorce in the City of Juarez, State of Chihuahua, Mexico. Defendant appeared personally in the Mexican proceeding. Plaintiff filed a power of attorney, executed in June 1963, in which plaintiff submitted to the jurisdiction of the Mexican court and acknowledged the incompatibility of temperaments constituting the grounds for the divorce. On July 16, 1963 a divorce decree was entered by the Mexican court and the custody of the two children was granted to plaintiff. A March 12, 1963 separation agreement was incorporated therein by reference.
The 1964 support order and the subsequent orders did not separately designate the amounts payable to plaintiff and those payable to the children. The appeal challenges the portion of the March 23, 1973 judgment establishing accumulated arrears representing support money for plaintiff alone. The sole ground of appeal is that the Juvenile and Domestic Relations Court lacked jurisdiction to award or enforce an order for the support of plaintiff in view of the 1963 divorce decree.
Plaintiff's 1964 complaint was brought pursuant to N.J.S.A. 2A:4-18(e), which reads as follows:
The juvenile and domestic relations court shall also have jurisdiction concurrently with such other courts as may have jurisdiction over the matter, to hear and determine in a summary manner disputes and complaints:

* * * * * * * *
e. Involving the domestic relation, where a husband or father deserts his wife or child even though they continue to live in the same household, in which case the court may order adequate support of his wife, child or family.
*471 The jurisdiction of the Juvenile and Domestic Relations Court (hereinafter sometimes "the Juvenile Court") cannot be conferred by consent and is limited to the subject matter set forth in the statute. State v. Bruneel, 14 N.J. 53, 58 (1953); Gregg v. Bergen County Juvenile and Domestic Relations Court, 133 N.J.L. 89, 91 (E. & A. 1945); Compton v. Compton, 109 N.J. Super. 5, 8 (App. Div. 1970); Tracey v. Tracey, 69 N.J. Super. 382, 388 (App. Div. 1961). To obtain support in that court for herself, as opposed to the children of the marriage, a woman must be married to the defendant at the time the action is commenced; otherwise, subject matter jurisdiction is lacking. Curley v. Curley, 37 N.J. Super. 351, 356 (App. Div. 1955).
With the foregoing principles in mind, defendant places his sole reliance on the case of Zito v. Zito, 12 N.J. Misc. 712 (J. & D.R.C. 1934). In that case the court denied support to a wife where the defense was based on a Nevada divorce decree between the parties. Although there was evidence that the validity of the Nevada divorce might be subject to attack on the basis of fraud, the court declined to rule on its validity, holding that it was without jurisdiction to do so. It concluded that the Legislature never intended the Juvenile Court to have the authority to determine the validity of foreign divorce decrees.
We hold that Zito was decided incorrectly. It is hereby overruled.
The Juvenile Court has the authority to determine whether it has jurisdiction in any case before it. Since, apart from maintenance of children, it may only order support of a "wife," of necessity it must determine whether plaintiff and defendant are married before its jurisdiction in this respect may be exercised. Where that inquiry involves an appropriately raised defense as to the validity of a divorce between the parties, it must decide that threshold issue. There is nothing in the Juvenile and Domestic Relations Court Act which precludes that determination. See Rehder v. Rehder, 13 N.J. Misc. 310 (J. & D.R.C. 1935); Tasto v. Tasto, 4 *472 N.J. Super. 547 (App. Div. 1949); Tegenborg v Tegenborg, 26 N.J. Super. 467 (App. Div. 1953). Where, as here, the statute does not prohibit the exercise of such authority by that court, the power to do so will be implied. See Mattox v. Mattox, 43 N.J. Super. 111, 115 (App. Div. 1956); D. v. D. 56 N.J. Super. 357, 361 (App. Div. 1959).
When Zito was decided, the statute expressly excepted from Juvenile Court jurisdiction matters cognizable in the Court of Chancery and limited its authority to grant support for a wife to situations where she might become a public charge. Lassaso v. Lassaso, 1 N.J. 324, 328 (1949); Bonanno v. Bonanno, 4 N.J. 268, 273 (1959). Nevertheless, then, as now, the court was vested with "all the powers, rights and privileges incident to hearing, determination and final disposition" of all support cases over which it had jurisdiction "as are or may be exercised * * * by any other court having jurisdiction over such cases." N.J.S.A. 2A:4-19. This authority includes the usual power of a court to determine whether it has subject matter jurisdiction of a case before it. See 20 Am. Jur.2d, Courts § 92 (1965).
In any event, since Zito the statute was amended in 1946 to confer on the Juvenile Court concurrent jurisdiction with the Superior Court in cases involving the support of a wife, actually or constructively deserted. N.J.S.A. 2A:4-18, subsections (e) and (f); Bonanno v. Bonanno, supra.[2] In all such cases the concurrent authority includes the power to decide the continued existence of the marriage and the validity of any intervening divorce. If the divorce is valid, *473 support for plaintiff must be sought in the Superior Court; if it is not, her maintenance as a wife may be obtained either in the Juvenile Court or the Superior Court.[3]
The purpose of the Juvenile Court Act is to provide a forum in which adequate support for wives who meet the legislative prerequisites therefor may be afforded expeditiously. Wilson v. Wilson, 86 N.J. Super. 61, 64 (App. Div. 1964); Tracey v. Tracey, supra, 69 N.J. Super. at 388. To require recourse to the Chancery Division of the Superior Court whenever the validity of a foreign divorce is involved would thwart the legislative intent.
Admittedly, jurisdiction over subject matter may not be conferred by consent or be waived and lack of such jurisdiction may be raised or noted at any time. R. 4:6-7; State v. Bruneel, supra; Tracey v. Tracey, supra; McKeeby v. Arthur, 7 N.J. 174, 181 (1951). However, the court rules contain liberal provisions for transfers of actions among courts where subject matter jurisdiction is involved. R. 1: 13-4.
If in 1964 the parties were validly divorced, the Juvenile Court, having so found, would have been without jurisdiction to award plaintiff support then or thereafter and the order appealed from would be a nullity. But to project this case as one involving subject matter jurisdiction with respect to all of the support orders prior to and including the 1973 judgment for arrears is to permit a legal label to obfuscate the real issue.
When the original order was entered in 1964, the court had subject matter jurisdiction to award support for defendant's wife. By not raising the Mexican divorce as a defense in that hearing, defendant acquiesced in the implied *474 jurisdictional finding by the court that plaintiff was then his wife. His continued failure to raise that defense during later proceedings, even when he was the moving party, until some nine years after the 1964 order was entered, lends added support to the conclusion that the court below had jurisdiction to adjudicate and enforce that order, at least to the extent of moneys due thereon to plaintiff as of March 23, 1973. This result would not bar defendant's later contest, by appropriate motion, of the Juvenile Court's continued jurisdiction to award plaintiff support since March 23, 1973 by reason of the divorce. See Kershner v. Kershner, 39 N.J. Super. 604, 607 (J. & D.R.C. 1956); McKeeby v. Arthur, supra. If such a motion is made, that court may then decide, on the proofs before it, whether the divorce is valid or whether equitable principles such as laches, estoppel or unclean hands should preclude future relief to one or both parties even if it is found to be invalid.[4]
The record furnishes no clue as to what transpired during any hearing prior to that in March 1973 when the judgment was entered. It is not idle to assume that, although then not known to the court, the amount of support set forth in the 1964 order substantially reflected the support provisions of the separation agreement incorporated in the Mexican decree. The latter stated that the agreement was "not merged therein" but was to "survive the decree * * * and continue to have full force and effect." This may explain defendant's failure to apprise the court of the divorce decree.
In any event, whether or not the Mexican divorce were valid, in 1964 plaintiff could have obtained adequate support *475 for herself in the Superior Court, Chancery Division, either in accordance with the separation agreement or irrespective thereof. See fn. 3. The 1964 and subsequent support orders were entered after hearings before the court below. They are not being attacked here as providing excessive support to plaintiff. Neither the amount of arrears established by the judgment below nor any other provision thereof is now challenged, except for the limited jurisdictional issue raised.
Accordingly, we modify the judgment below to provide for an extension of the time for defendant to pay the $6,000 arrears to 30 days from the date of this opinion, and as so modified, it is affirmed.
Remanded to the Monmouth County Juvenile and Domestic Relations Court for proceedings consistent with this opinion.
NOTES
[1] Although the judgment appealed from refers to arrears on the order of March 15, 1968, the amount of basic support required has not changed since the original order of February 21, 1964. We have considered the latter to be the order of support for the purpose of this appeal. The March 23, 1973 order hereafter will be referred to as a judgment.
[2] The standards for desertion or cruelty resulting in constructive desertion may differ, however, to some extent in the two courts. See Mattox v. Mattox, supra; Compton v. Compton, supra. Again, the Superior Court has jurisdiction to award support to a wife where there is a consensual separation; the Juvenile Court does not. Caravella v. Caravella, 36 N.J. Super. 447 (App. Div. 1955). Cf. Daly v. Daly, 39 N.J. Super. 117 (J. & D.R.C. 1956), aff'd 21 N.J. 599 (1956). In any event, her status as a wife must be determined by the court involved before a support order may be entered.
[3] See N.J.S.A. 2A:34-23, 2A:34-24, 2A:34-24.1; Schlemm v. Schlemm, 31 N.J. 557 (1960); Hudson v. Hudson, 36 N.J. 549 (1962); Berkowitz v. Berkowitz, 55 N.J. 564 (1970); Schiff v. Schiff, 116 N.J. Super. 546 (App. Div. 1971), certif. den. 60 N.J. 139 (1972).
[4] We note, without deciding, that the purported Mexican divorce may be void on its face. Warrender v. Warrender, 79 N.J. Super. 114, 118 (App. Div. 1963), aff'd o.b. 42 N.J. 287 (1964). See Kugler v. Haitian Tours, Inc., 120 N.J. Super. 260 (Ch. Div. 1972); Annotations, 13 A.L.R.3d 1419 (1967). As to the application of the equitable principles referred to, see Warrender, supra, 79 N.J. Super. at 119; Weinberg v. Todd Shipyards, 97 N.J. Super. 289, 293 (App. Div. 1967), certif. den. 51 N.J. 9 (1967).